Estate of Joseph Karger, Deceased, Frances Karger, Administratrix v. Commissioner.
Estate of Karger v. Commissioner
Docket No. 2194.
United States Tax Court
T.C. Memo 1954-98; 1954 Tax Ct. Memo LEXIS 149; 13 T.C.M. (CCH) 661; T.C.M. (RIA) 54204; July 13, 1954, Filed *149 Held, fees paid by a doctor, engaged in the practice of performing abortions, to other persons who referred clients to him for such purpose, are not deductible because contrary to sharply defined public policy. Held, further, expenses for salaries, medical supplies, etc., alleged to have been incurred in the course of taxpayer's trade or business, are not deductible either because not proved or because contrary to public policy and good morals. Certain items, such as taxes and interest, are deductible. Held, further, fraud penalties sustained. Samuel Falk, Esq., for the petitioner. John J. Madden, Esq., and James J. Quinn, Esq., for the respondent. VAN FOSSAN Memorandum Opinion VAN FOSSAN, Judge: The Commissioner determined deficiencies in income tax and additions to tax (penalties), as follows: 50%
25%
Year
Deficiency
Penalty
Penalty
1938
$ 2,219.80
$ 1,109.90
None
1939
23,323.94
11,661.97
None
1940
94,182.14
47,091.07
None
1941
76,085.88
38,042.94
$19,021.47
The parties entered into and filed with the Court at the hearing, the following stipulation of facts: Joseph Karger, hereinafter sometimes refered *150 to as decedent, died on August 5, 1950. He had been engaged in the practice of medicine commencing in the year 1914 until the formal revocation of his license on July 24, 1942. During the period 1938 to September, 1941, decedent maintained his office at 329 East 17th Street, New York, New York. The premises at this address were raided on September 10, 1941. Decedent was arrested and charged with unlawfully performing abortions. On May 18, 1942, after a trial, decedent was convicted and was sentenced to a term of one and one-half to three years in the State Penitentiary. At the time of decedent's arrest there were found in his possession certain books in the decedent's handwriting which contained records of the income which decedent secured from his practice for the period August 29, 1938 to December 31, 1938 for the calendar years 1939 and 1940, and for the period January 1, 1941 to July 26, 1941, inclusive. These books were kept in code and contained the following information: date, name of patient, name of person by whom patient was referred, fee paid by each patient and the amount paid to the person by whom the patient was sent to Dr. Karger. The books disclosed the following *151 sums as having been paid as fees to Dr. Karger for the years indicated: 1938
1939
1940
1941
$7,930
$84,291
$165,950
$107,539
The amounts shown on the books as paid to other persons by Dr. Karger for sending patients for the purpose of having abortions performed were, for the years indicated, as follows: 1938
1939
1940
1941
$2,393
$34,293
$ 68,910
$ 44,476
The following schedules show the amounts paid for the purposes indicated in the years 1938, 1939, 1940 and 1941 by Dr. Karger: 1938
Salaries
$ 693.00
Medical Supplies
126.88
Real Estate Tax Office Building
776.44
Real Estate Tax House
352.80
Water Tax Office Building
17.25
Interest on Mortgage
1,710.00
Depreciation Real Estate
310.57
Telephone, Electric and Misc.
240.18
Janitor
360.00
Heating
300.00
Insurance Building
300.00
Sales and Luxury Tax
25.00
Auto Registration
41.75
State License
2.00
Narcotic License
1.00
Auto Insurance
200.00
Total
$5,456.87
1939
Salaries
$1,386.00
Medical Supplies
253.76
Real Estate Tax (office)
781.75
Real Estate Tax (home)
525.07
Water Tax
34.50
Interest on Mortgage
1,710.00
Depreciation Real Estate
310.57
Telephone and Electric and Misc.
480.26
Janitor
420.00
Heating
440.00
Insurance Building
300.00
Sales and Luxury Tax
35.00
Auto Registration
41.75
State License
2.00
Narcotic License
1.00
Auto Insurance
264.38
Total
$6,986.04
1940
Salaries
$1,236.00
Social Security
9.36
Supplies
656.85
Real Estate Tax (building)
730.10
Real Estate Tax (home)
342.42
Water Charges
34.50
Depreciation Real Estate
310.57
Interest on Mortgage
1,710.00
Telephone, Electric and Misc.
484.53
Janitor
420.00
Heating
440.00
Insurance
300.00
Sales and Luxury Tax
35.00
Auto Registration
41.75
State License
2.00
Narcotic License
1.00
Auto Insurance
239.67
Total
$6,993.75
1941
Salaries
$ 850.00
Social Security
10.36
Medical Supplies
250.00
Real Estate Tax (office)
695.60
Real Estate Tax (home)
322.90
Water Tax - Office
34.50
Interest - Mortgage - 17th St.
1,710.00
Depreciation Real Estate
310.57
Telephone, Electric & Misc.
670.27
Janitor
315.00
Heating
330.00
Insurance Building
300.00
Sales and Luxury Tax
35.00
Auto Registration
41.75
State License
2.00
Narcotic License
1.00
Total
$5,878.95
*152 During the calendar years 1938, 1939, 1940 and 1941, the canons of ethics of the American Medical Association and of the New York State Medical Association prohibited the splitting of fees by doctors. The following additional facts are found from the evidence and exhibits submitted by respondent. Petitioner presented no evidence, excepting the above stipulation. For the calendar years 1938, 1939 and 1940 decedent filed Federal income tax returns showing net income in the amounts of $826.53 and $1,791.39, respectively, for the calendar years 1938 and 1940, and showing a net loss of $42.53 for 1939. Decedent filed no return for the year 1941. Decedent discussed his records with one Dr. Gade, who was associated with petitioner during part of 1941, and advised Dr. Gade that he could guarantee a gross income of $100,000, or better, per year from his practice. While decedent's income was almost exclusively derived from the practice of performing abortions, he had some other income, the amount and nature of which were not proven. Decedent told Dr. Gade that he did not report all his earnings from his abortion practice but reported only $7,000 or $8,000 per year and that Dr. Gade *153 should only report the same amounts. Decedent advised Dr. Gade that if the latter reported his full earnings it might lead to an investigation of decedent's affairs. A certified public accountant was retained in 1942 or 1943 to prepare and file amended New York state income tax returns for decedent, based on the income set forth in the books maintained by decedent in code in his own handwriting. The original New York state income tax returns disclosed income substantially as contained in decedent's Federal income tax returns for 1938, 1939 and 1940. The amended New York state income tax returns showed net income in the respective amounts of $51.46, $38,107.51, $81,589.85 and $51,628.80 for the years 1938 through 1941. The Federal income tax returns of decedent for 1938, 1939, and 1940 were each false and fraudulent with intent to evade taxes and all, or a part, of the deficiencies in tax is due to fraud with intent to evade tax. Decedent's failure to file a Federal income tax return for 1941 was due to fraud with intent to evade tax and all, or part, of the deficiency in tax for the year 1941 is due to fraud with intent to evade tax. The following questions are here presented: *154 1. In computing the net income of Karger, now deceased, formerly a doctor whose license to practice medicine was revoked on his conviction in New York state of performing abortions, should deductions be allowed for sums paid to other persons who referred patients to Karger for the purpose of having abortions performed? 2. In such situation, may deductions be allowed for expenses alleged to have been incurred in maintaining an office and carrying on his trade or business? 3. Were the deficiencies in tax for the years 1938, 1939, and 1940 in whole or in part due to fraud with the intent to evade tax by decedent in the filing of his tax returns? Was decedent's failure to file a tax return for the year 1941 and the consequent deficiency due in whole or in part to fraud with intent to evade tax? Was respondent justified in making a 25 per cent addition to the tax for the year 1941 for negligence in not filing a return? Decedent was engaged in a practice everywhere outlawed by criminal statutes. Performance of, or attempted performance of, or the conspiracy to perform abortions, excepting certain specified cases, is prohibited by law and condemned as contrary to public policy and *155 good morals. In the long category of crimes, few, if any, are considered as more reprehensible or revolting to common decency and good public morals. The payments of fees here first in question are in direct consequence of decedent's activity in performing illegal operations. They contemplated that an act both contrary to the criminal statutes of New York and everywhere condemned as shocking to public conscience and good public morals be performed by decedent. Albeit the income tax law is not and does not authorize a tax on gross income, deductions are a matter of legislative grace and when challenged by the Government such deductions must be justified by the one claiming them. Deductions, such as here involved, are uniformly disallowed as frustrating sharply defined public policy. They are both malum in se and malum prohibitum. Petitioner cites no authority, and there is none, justifying such deductions. Decedent's activity was of such a leprous character that it contaminated all who touched it. The fees in question were paid by one participant in a crime to an accomplice or a co-conspirator in crime. Such deductions cannot be allowed. ; *156 . Petitioner also claims deductions of various expenses alleged to have been incurred in connection with decedent's trade or business. It is fundamental in income tax law, as above noted, that deductions are a matter of legislative grace and he who claims them must bring himself clearly within the scope of the permissive statute. With regard to salaries paid, the petitioner's first burden is to prove that they constituted ordinary and necessary business expenses of decedent. This it has failed to do. The only fact shown with respect to salaries is that they were paid in certain amounts. We do not know to whom they were paid or for what services. Therefore, we are unable to find that they were deductible as ordinary and necessary business expenses. As to medical supplies, the clear inference from the record is that they constituted the tools for decedent's illegal and criminal business. These items cannot be allowed as being contrary to well defined public policy. ; ; Certain other items are deductible *157 though not connected with any trade or business. These are real estate taxes, sales taxes, auto registration fees and interest on mortgages. These items are allowed as deductions. All of the remaining items must be disallowed because they were not substantiated by the record as ordinary and necessary business expenses. Such items are not selfproving. They are accordingly disallowed. There remains the question of fraud. On the record made, we have no doubt as to the correct finding. Decedent had large amounts of taxable income which he did not report. He was well aware of his duty to make a true return of all income received. As has many times been said, the unexplained failure to report large sums of income received suggests a fraudulent motive. Here the evidence reveals that decedent told his associate he did not report all his income from his abortion practice, and he advised his associate to follow his lead, lest there might be an investigation. All inferences and deductions from the facts are consistent only with a fraudulent intent to evade tax. We hold that respondent correctly imposed the 50 per cent addition to the tax for all years for fraud. As to the year 1941, a further *158 addition to the tax of 25 per cent for failure to file a reutrn is also sustained. Petitioner has not proved the failure to file was due to reasonable cause and not to willful neglect. Decision will be entered under Rule 50.